Judge Underwood,
delivered the opinion of the court.
Ix 1790, Robert Baird, the ancestor oí’ the plaintiffs in error, and Robert Barnett, executed their joint obligation to James Baird,the ancestorof the defendants in.error, for the conveyance of six hundred* part of a tract of two thousand acres- of land. In 1799, Robert Baird and James Baird, entered into an article of agreement,- from which it appears, that the parties, calculating on a probable surplus in the tract' of two thousand acres, after laying off the different tracts or parcels which had been sold, the said Robert agreed to let said James have the surplus, for which the latter agreed to pay, on receiving a deed therefor, as for the other land, meaning thereby, we presume, that he would pay the same price, and in property or money per acre, which- he had- agreed to pay for the six hundred acres.
In 1823, James Baird filed his bill against the heirs of Robert Baird and those of Robert Barnett, with, a view to obtain a title for the surplus, and if that could not be had, then the value of the land in money. Pending the suit, James Baird died, and it was revived in the names of the defendants in error, as his heirs. The qourt decreed, against the plaintiffs in error, $175 to be levied of the estate descended, stating that amount to he the principal paid by James Baird, for the surplus and interest thereon.
To reverse this decree, the writ of erroris prosecuted.
It seems from the exhibits, that James Baird instituted a suit iii 1808, for the purpose of obtaining a specific execution of the contract for the six hundred acres of land. In this suit, however, he failed, his bill having been dismissed. He states in the bill then filed, that he was to pay €20 per hundred in property, for the six hundred acres of land, and that he had paid £30. Theprayer is, that Baird and Barnett might bo *581 compelled to convey, upon the payment of the balance of the consideration due for the land Ac. The bill filed in the present case, alleges a payment of £22 ;Hozourds the land" leaving it somewhat indefinite whether the complainant intended to charge the payment of that sum as made for the six hundred acres or for the surplus. The payment must be applied to the surplus to authorize the relief asked; for the contract relative to the six hundred acres, was fully disposed of by the decision of the suit instituted in 1808. As evidence of the payment of the £28, two receipts are. exhibited, one dated in 1798, which acknowledges the receipt of £8 on “account of part of the price of land bought of Robert Barnett and myself,” (to-wit: Robert Baird,) the other dated in 1800, acknowledges tfie receipt of £'20, “being the price of one hundred acres of land sold by myself, (to-wit: Robert Baird) and Robert Barnett to him,” (meaning James. Baird.) Both receipts are signed by Robert Baird. That for £20 seems to be mutilated, and a considerable part of it is illegible. It seems to us, that there is no sufficient evidence, shewing that any payment was ever made by James Baird for the surplus land, which constitutes the subject of the present controversy. Neither receipt applies in terms to the surplus. The £8 were paid before the contract for the surplus was made, and therefore, the receipt for that sum cannot operate upon the present controversy. The £20 was paid for, and on account of one hundred acres of land, sold by Robert Baird and Robert Barnett to James Baird. Now, Robert Barnett does not appear to be a joint vendor of the surplus, nor does it appear that the surplus was ever ascertained until 1821, when a survey was made by order of court, when it was found to be one hundred and sixty seven acres, instead of one hundred. We cannot, therefore, perceive any sufficient reason for applying the £20 receipt, as a payment for the,surplus land, especially when the contract relative to the surplus did not bind James Baird to pay for it, and! he received a deed, and when, from his own shewing, he was considerably in arrear when he filed his bill in 1808, for the six hundred acres. The ancestor of the ,defendants in error, after having the contract relative to tlie six hundred acres fully disposed of by the suit instituted in 1808» cannot resuscitate that controvew *582 sy, and by coupling it with the contract relative to the surplus, obtain a decree, which, upon the contract for the surplus alone, and unaided by that for the six hundred acres, he would not be entitled to.
.Recovery on an article of agreement for land, barred by lapse of 20 years.
M1 Henry, for plaintiffs.
This case musí stand upon the contract for the surplus, and viewing it in that light, we are of opinion, that the complainants in the circuit court Were not entitled to a decree.
The lapse of time independent -of any other consideration, is a bar to the relief sought.. It does not appear that the parcels of land previously sold had ever been laid off so as to ascertain the quantity and position of the surplus, if there was any, nor that the surplus, if any, adjoined the six hundred acres previously contracted for.
It does not appear that James Baird1 was ever possessed of any part of the land as surplus. Under these circumstances, having permitted more than twenty years to elapse before the institution of this suit, we think the chancellor ought not to tolerate his suit. The-transactions have laid dormant too long to be revived. The policy of this rule of limitation is manifested by' this case; which is now a controversy between heirs, all the original parties to the transaction being dead. It is useless to notice other points. The decree must be reversed with costs, and the cause remanded with directions to dismiss the bill.